IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JUAN BARNES,<br><br>   Plaintiff,<br><br>v.<br><br>SGT. BENNETT, et al.,<br><br>   Defendants. | Civil Action No.:  JRR-22-2619 |

**MEMORANDUM OPINION**

Pending in this civil rights case is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF 36. Plaintiff Juan Barnes was advised of his right to file an opposition response, and his request for an extension of time to do so was granted; however, he has not filed anything further in this case. *See* ECF 38, 40, 41. Also pending is Plaintiff's Motion for Preliminary Injunction to which Defendants respond in their Motion. ECF 31, 36. No hearing is needed to address the pending matters. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, Defendants' Motion shall be granted in part and denied in part. Plaintiff's Motion for Preliminary Injunction shall be denied.

**BACKGROUND**

Because Plaintiff's initial Complaint (ECF 1) was too confusing and lacking in detail to state a clear claim against any Defendant, Plaintiff was directed to file an amended complaint. ECF 13. Plaintiff initially filed incomplete civil complaint forms, ECF 14, but filed separate documents that appeared to be an amended complaint. ECF 16. Therefore, the documents at ECF 14-2 and 16 were determined to be the operative pleadings. ECF 20. Because the Amended Complaint failed to state a claim against either Warden, claims against them were dismissed. *Id*.

Defendant "Horizon" was construed to be Corizon Medical, Inc., for which a bankruptcy stay is in effect. Defendants Lt. Benjamin Wagner, Lt. James Bennett, Lt. James Smith, Sgt. Eric J. Smith, and Correctional Officers ("CO") William Twigg and Christopher Loibel were directed to respond.[1]  *Id*.

### A. Amended Complaint Allegations

Plaintiff alleges that an inmate called "Ellis" approached him with a copy of an Administrative Remedy Procedure ("ARP") complaint that he had written about Lt. Benigan[2], directed him to "sign off" on it if he did not want to be stabbed, and told him to tell Lt. Wagner that he would sign off on the complaint.  ECF 16 at 2.  He alleges further that Lt. Wagner called Plaintiff to a meeting with Sgt. Bennett at which they asked him to sign a form.  *Id*.  Plaintiff alleges that they "had [him] sign a form, then told me to say to police I lied wich [sic] I did not want to do."  *Id*.

Plaintiff alleges that on July 10, 2021, "word got back to Ellis," and Plaintiff was let out of his cell by the control room officers, "ambushed," "forced into the restroom," and "attacked."[3]  ECF 16 at 3.  Plaintiff alleges that someone stated that he had put a "PREA" on "one of the most loved [lieutenants] in prison."[4]  *Id*.  While Plaintiff does not allege who attacked him, he alleges that he "knew they were on behalf of Lt. Wagner and Sgt. Bennett."  *Id*.  Without providing details, Plaintiff alleges that "further bullying" caused him to "go to a pass" and "go out of bounds" on August 27, 2021, in order to go to the administration building to make a report.  *Id*.

---

[1] Defendants Medical Director of "Horizon" and Burnice Mace were also listed in the caption of the Amended Complaint but were not served.  ECF 16.  Neither is mentioned anywhere in the document outside of the case caption.  *Id*.  Therefore, the Amended Complaint will be dismissed as against them pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim.  The Clerk shall be directed to correct the names of the remaining Defendants on the docket.
[2] Lt. Benigan is not a defendant.
[3] Even liberally construing the Amended Complaint, it does not appear that Plaintiff intends to state a failure to protect claim related to this incident.
[4] "PREA" refers to the Prison Rape Elimination Act of 2003.  34 U.S.C. § 303.

Plaintiff alleges that on August 27, 2021, Lt. Smith reviewed "the footage"[5] with him and agreed to place him on administrative segregation. ECF 16 at 5. However, Plaintiff alleges that upon learning of his PREA complaint, Lt. Smith "denied [him] protection and tried to send [him] back into the hands of the aggressors." *Id*. As a result, Plaintiff alleges, he felt suicidal and climbed a fence in the rain as he asked for help. *Id*. Plaintiff further alleges that Sgt. Bennett told COs Twigg and Loibel to "spray his dumb ass," at which point Twigg and Loibel sprayed him with pepper spray so that he could not see or hold on, and he fell off the fence. *Id*. at 6. Plaintiff alleges that after he fell off the fence, officers jumped on him, put him in a choke hold, and sprayed more pepper spray in his face. *Id*. Plaintiff alleges that Officer Twigg punched him in the face and a knee was placed on his neck; more pepper spray was disbursed until Sgt. Bennett yelled at the officers to stop. *Id*. Plaintiff alleges that officers required him to walk to medical without shoes on even though his leg was injured. *Id*. at 7. He alleges that he was not treated for pepper spray or examined for injury. *Id*.

### B.     Defendants' Response

Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF 36. In support of their Motion, Defendants filed a Memorandum as well as evidentiary support in the form of declarations, medical records, and a video recording. ECF 36-1 through 36-13. Plaintiff has not filed an opposition response or otherwise challenged the authenticity or substance of the evidence Defendants submit to the court.

The undisputed facts based on the admissible evidence submitted by Defendants are as follows:

---

[5] The subject of the video footage referenced is not clear.

Defendant Lieutenant Benjamin Wagner interviewed Plaintiff on June 1, 2021, regarding allegations of sexual assault by Lt. Brinegar. ECF 36-3. During that interview, Plaintiff told Lt. Wagner that he had been coerced by a former cellmate to file the complaint in order to receive an Xbox and television. *Id*. at ¶ 4. Plaintiff withdrew the complaint in writing, stating that the complaint was "coerced" and "not true." *Id*. at ¶ 3. Lt. Wagner further declares that he has "not engaged in any form of retaliation against Mr. Barnes." *Id*. at ¶ 7. Attached to Lt. Wagner's declaration is Plaintiff's report of a sexual assault (ECF 36-4), Plaintiff's written withdrawal of the complaint (ECF 36-5), and a copy of an email from Lt. Wagner documenting his interview with Plaintiff (ECF 36-6).

Jason Harbaugh, the Security Chief at Western Correctional Institution ("WCI"), declares that Plaintiff was transferred from WCI to North Branch Correctional Institution ("NBCI") on August 27, 2021, after he attempted to climb a perimeter fence at WCI, because NBCI "provides greater security." ECF 36-7 at ¶ 1. That same day, Plaintiff was charged with several disciplinary infractions related to the incident, to which Plaintiff entered guilty pleas on September 21, 2021.[6] *Id*. at ¶ 2.

Medical records include that on August 27, 2021, Plaintiff saw Janette Clark, NP for a pepper spray exposure. ECF 36-10. Clark noted pepper spray on "bilateral arms, face, t-shirt," mild ecchymosis of the right anterior/lateral forearm, and a .5 cm laceration on the right lateral fifth finger. *Id*. Clark cleaned the wound and applied a steri-strip and band-aid. *Id*. Plaintiff's face was cleaned. *Id*. Plaintiff reported chronic low back pain but denied "any other medical concerns or pain at this time." *Id*. No other injuries were noted. *Id*. Clark referred Plaintiff to a provider for follow-up in one week. *Id*. at 2.

---

[6] Harbaugh declares that copies of the disciplinary proceedings are attached to his declaration as exhibits, however, they are not in the record.

Defendant James Bennett, a correctional captain at NBCI, has been a supervisor at NBCI since February 12, 2020, and was promoted from Sergeant to Lieutenant in 2019. ECF 36-11. Because he is employed at NBCI, he cannot be the "Sgt. Bennett" who allegedly retaliated against Plaintiff for filing a PREA complaint at WCI. *Id.* at ¶¶ 3-4. Captain Bennett further declares, over no challenge by Plaintiff, that he had no contact with Plaintiff and did not retaliate against him. *Id.* at ¶¶ 5, 8.

Defendant Sgt. Eric J. Smith, a correctional sergeant at NBCI, declares that he was not the "'sgt. of the building'" at WCI that Plaintiff refers to in his Amended Complaint; he has never worked with Lt. James J. Smith or Lt. Benjamin Wagner, both employed at WCI, and has never had contact with Plaintiff. ECF 36-13 at ¶¶ 3-5. Plaintiff, as said, raises no dispute as to these assertions of fact.

Finally, Defendants submitted a video recording of the August 27, 2021, incident. ECF 36-1 at 4, n.4.[7] Defendants state that the video shows "Mr. Barnes actively climbing high up on a prison fence. He is sprayed by an officer with a single blast of pepper spray. Barnes climbs down, jumping the final few feet. After he jumps down, the Plaintiff lies face down, as officers struggle to handcuff him. Thereafter, the Plaintiff walks away from the area in handcuffs and under escort. The take-down occurred quickly. The video does not record a choke hold, a punch, or a knee to the [*sic*] Plaintiff['s] neck." ECF 36-1 at 4. Plaintiff, by failing to respond to Defendants' Motion, does not challenge the authenticity of the video or mount a challenge as to what Defendants contend it shows; however, regardless of what Defendants may assert the video demonstrates, the video objectively and plainly depicts Plaintiff high on the fence with several officers running

---

[7] Defendants did not file the video as an exhibit. Instead, they state that they mailed a copy separately to the Clerk. ECF 36-1 at 4, n.4. The video was received and is on file with the Clerk. John White, a Correctional Case Management Specialist at NBCI, declares that he showed the video, in its entirety, to Plaintiff in the Inmate Grievance Office at NBCI on June 26, 2024. ECF No. 36-8 at ¶ 7. Plaintiff does not challenge or oppose this assertion.

towards the scene. A short burst of pepper spray is deployed at Plaintiff, and he immediately climbs most of the way down the fence and then jumps to the ground. He kneels and then lays down on the ground as officers surround him. Just as the officers appear to be laying hands on him, presumably to handcuff him, the camera zooms out and the rest of the scene is recorded from a distance too far away to be discernable. If the video shows Plaintiff being handcuffed and walking away, it is not at all clear. The court finds therefore that while no challenge is posed as to the authenticity or content of the video, Defendants' assertion of what it depicts is not evidence or an undisputed record fact for purposes resolution of their Motion.

## STANDARD OF REVIEW

### A.     Motion to Dismiss

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (*per curiam*). As is the case here, when a movant titles its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the Court's consideration, the

parties are deemed on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Proc. § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

B.     **Summary Judgment**

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The Court "view[s] the evidence in the light most favorable to . . . the nonmovant, and draw[s] all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of

conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because Plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That notwithstanding, the Court must also abide the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## DISCUSSION

### A. Defendants Lt. James Bennett and Sgt. Eric J. Smith

Defendants argue that the Amended Complaint against Captain James Bennett[8] and Sgt. Eric J. Smith should be dismissed for failure to state a claim because they are employed at NBCI and were not present at WCI during the events described. ECF 36-1 at 8-9. Both Bennett and Eric

---

[8] Formerly Lieutenant Bennett. *See* Bennett Declaration, ECF 36-11 at ¶ 4.

J. Smith submitted declarations explaining that they are employed at NBCI, have not had contact with Plaintiff during the relevant time period, and do not know why Plaintiff has named them in his suit.  Bennett Decl., ECF 36-11; Eric J. Smith Decl., ECF 36-13.  While Defendants Bennett and Smith move to dismiss the Amended Complaint pursuant to Rule 12(b)(6), ECF 36-1 at 9, the Court has considered the submitted declarations.  Therefore, the Motion is construed as one for summary judgment and granted as to these Defendants, because Plaintiff fails to generate a dispute of fact as to these Defendants' involvement in the alleged incident, and they are therefore entitled to judgment as a matter of law.

### B. Excessive Force Claim - Defendants William Twigg and Christopher Loibel

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. CONST. AMEND. VIII.  This prohibition "protects inmates from inhumane treatment and conditions while imprisoned."  *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).  The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams*, 77 F.3d at 761.

On the subjective element, an inmate must show that the guards used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).  In assessing this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used;

(3) the extent of any reasonably perceived threat;" and "(4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321).

As for the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. at 37 (quoting *Hudson*, 503 U.S. at 9). Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury. *Id*. at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. The extent to which injuries are modest is accounted for in the award of damages. *See Wilkins*, 559 U.S. at 40.

Plaintiff alleges that Defendants Twigg and Loibel used excessive force against him after he climbed a fence on August 27, 2021. ECF 16 at 6. Specifically, Plaintiff alleges that even though he did not resist, he was "put in a chokehold," "sprayed with more mace," and "punched in the face by Officer Twigg." *Id*. Defendants contend that Plaintiff fails to state a claim of excessive force, but they support their argument with video and documentary evidence, which cannot be considered on a Rule 12(b)(6) motion. Therefore, Defendants' Motion will be converted and considered as a motion for summary judgment as to the claim of excessive force.

Relying heavily on the video evidence, Defendants argue that "[i]f the Plaintiff had been punched, choked, placed in a headlock or had someone's knee on his neck, it would have been apparent from the video." ECF 36-1 at 11. The video footage, like other evidence or exhibits, is

construed in the light most favorable to Plaintiff, as the nonmovant. *See Brooks v. Johnson*, 924 F.3d 104, 111 (4th Cir. 2019).

Here, the video corroborates Plaintiff's statement that he was not resisting, as it shows Plaintiff climbing down and jumping off the fence after being pepper sprayed and then laying on the ground. As officers are seen approaching Plaintiff as he lies on the ground, the camera abruptly zooms out making the subsequent events difficult or impossible to see. Defendants' contention that the video would show excessive force had it occurred is unavailing. Seen in the light most favorable to Plaintiff, the video fails to show that Plaintiff was handcuffed and lead away without inappropriate force.

Defendants additionally argue that "[i]f the Defendants had acted maliciously and sadistically, Mr. Barnes's medical examination would have revealed more than pepper spray exposure, a minor cut on a finger, and mild bruising on a forearm." ECF 36-1 at 11. Defendants' assessment of the medical evidence is also unavailing. While Plaintiff claims he was denied medical care, ECF 16 at 7, the undisputed facts set forth in the medical records confirm that Plaintiff was brought to medical following the incident and examined by a nurse practitioner who found the minor injuries noted by Defendants.[9] Medical Record, ECF 36-10; *see also* ECF 36-1 at 11. Absence of serious injury does not disprove or negate the presence of excessive force. *See Wilkins*, 559 U.S. at 39. The video is unclear, the medical records do not show no force employed, and Defendants Loibel and Twigg did not submit declarations. Accordingly, Defendants Twigg

---

[9] Plaintiff contends that he was denied medical care and a shower after being pepper sprayed, however, he does not name a defendant whom he claims was responsible. ECF 16 at 7. To the extent Plaintiff intended to state a claim for inadequate medical care in violation of the Eighth Amendment, he fails to do so. Section 1983 requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). As Plaintiff has not alleged that any defendant failed to provide him with adequate medical care, any such claim is dismissed pursuant to 28 U.S.C. 1915A(b) for failure to state a claim.

and Loibel have presented no undisputed facts to refute Plaintiff's clear allegations of excessive force. There Motion, construed as one for summary judgment, is denied.[10]

### C. Defendants Lt. Wagner and Sgt. Bennett

Plaintiff alleges that he was assaulted by unknown individuals and that the assault was conducted on behalf of Defendants Lt. Wagner and "Sgt. Bennett" in retaliation for filing a PREA complaint against Lt. Brinegar. ECF 16 at 3. Defendants argue that the Amended Complaint should be dismissed against Sgt. Bennett, because there is no such person employed at WCI.[11] ECF 36-1 at 8-9. Defendants further argue that Plaintiff fails to state a claim against Lt. Wagner for retaliation. *Id*.

To state a claim of retaliation, Plaintiff must allege that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (cleaned up) (citations omitted). Plaintiff has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the conduct of Defendants. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). In the prison context, Plaintiff must establish that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 & n.4 (9th Cir. 1985). The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution. *Id*. at 532.

---

[10] Plaintiff's allegation that he was placed in a chokehold, punched in the face, and maced all while he was cooperating and not resisting clearly states a claim of excessive force. Even had Defendants not submitted exhibits in support of their motion to dismiss, the motion would be denied on the 12(b)(6) standard set forth above.
[11] Again, Defendants state that no Sgt. Bennett is employed at WCI. ECF 36-1 at 12. Because Plaintiff has failed to state a claim against this Defendant, his identity need not be discerned.

Here, Plaintiff alleges that he was assaulted in retaliation for filing a PREA complaint, and that an assailant stated, "you put a PREA on one of the most loved LT in prison." ECF 16 at 3. Plaintiff alleges scant details of the alleged assault. He does not name or describe who attacked him; nor does he state whether the alleged assailants were inmates or correctional officers. Even taking as true Plaintiff's allegation that he was assaulted because of his PREA complaint, he alleges no facts that connect Lt. Wagner, or any other Defendant, to the alleged assault. Without factual support or explanation, he alleges only that he "knew [the assailants] were on the behalf of Lt. Wagner and Sgt. Bennett." *Id*.  As such, Plaintiff fails to state a claim for retaliation, and Defendant Wagner and Bennett's Motion, construed as a motion to dismiss, shall be granted as to that claim.

### D. Lt. James Smith

Plaintiff alleges that Lt. James Smith retaliated against him by denying him placement in segregation at WCI and transferring him to NBCI after learning of his PREA complaint. ECF 16 at 5. He states that on August 27, 2021, Lt. Smith "reviewed footage"[12] and agreed to place him in segregation at WCI, but upon learning of the PREA complaint, transferred him to NBCI in retaliation for that complaint. *Id*. However, the undisputed facts are that Plaintiff was transferred to NBCI immediately following the incident on August 27, 2021, when he climbed a perimeter fence. ECF 36-7 at ¶ 1. Plaintiff alleges no facts in support of his contention that Lt. Smith was responsible for his transfer to NBCI, much less that he arranged the transfer for purposes of retaliation. Even seen in the light most favorable to Plaintiff, Plaintiff fails to generate a dispute regarding his transfer; in other words, the undisputed record evidence is that his transfer from WCI to NBCI, a higher security facility, on August 27, 2021, was related to his having scaled a high

---

[12] The Amended Complaint is unclear, but it appears that Plaintiff is referring to video footage of an incident that took place prior to August 27, 2021.

14

fence that day and not in retaliation for any prior complaints. As such, the Motion, construed as a motion for summary judgment, will be granted in favor of Lt. James Smith.

### E. Injunctive Relief

On July 12, 2024, Plaintiff filed a "Motion for Preliminary Injunction," asking that the court order that he be placed in protective custody because he is in danger of being targeted by other inmates if he is in general population. ECF 31. The Motion, which does not appear to be directly related to the instant case, states that Plaintiff is currently in solitary confinement having refused housing in general population. *Id.* at 2. The Motion names two inmates Plaintiff believes are a danger to him but does not allege that either inmate threatened Plaintiff or that he was placed in close proximity to either of them. *Id.* at 1.

Plaintiff's Motion essentially asks this Court to restrain prison officials from placing him in general population. To obtain his requested relief, Plaintiff must "establish that [1] he is likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). The plaintiff must satisfy each requirement as articulated. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009). A preliminary injunction (as well as a temporary restraining order) is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

To meet the first requirement, the plaintiff must "clearly demonstrate that he will *likely succeed* on the merits," rather than present a mere "grave or serious question for litigation." *Id.* at 346–47 (emphasis in the original). Simply "providing sufficient factual allegations to meet the

15

[Fed. R. Civ. P.] 12(b)(6) standard of *Twombly* and *Iqbal*" does not meet the rigorous standard required under the *Winter* and *Real Truth* decisions. *Allstate Ins. Co. v. Warns*, No. CCB-11-1846, 2012 WL 681792, at *14 (D. Md. Feb. 29, 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). To establish irreparable harm, the plaintiff must show that he is suffering actual and imminent harm, not just a mere possibility; that harm is truly irreparable and cannot be remedied at a later time with money damages. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). Irreparable harm "is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (quoting *Danielson v. Local 275,* 479 F.2d 1033, 1037 (2d Cir. 1973)). When preliminary injunctive relief or a temporary restraining order will "adversely affect a public interest . . . the court may . . . withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312–13 (1982). In fact, "courts . . . should pay particular regard for the public consequences in employing th[is] extraordinary remedy." *Id.* at 312. In addition to the public interest determination, the balance of equities must tip in favor of the movant in order for the requested injunction to be issued. *Winter*, 555 U.S. at 20. Not only must courts weigh any potential harm to the nonmoving party, but also the chance of harm to any interested person, as well as any potential harm to the public. *Continental Group Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 356–57 (3d Cir. 1980).

Plaintiff does not satisfy any of the *Winter* factors. He makes general, mostly bare, allegations with little factual support. The allegations appear unrelated to the instant case, and he makes no showing of likelihood of success on the merits. Plaintiff suggests the possibility of irreparable harm, but makes no showing that harm is likely or imminent. He likewise does not

16

contend or establish that relief would be in the public interest or that equity weighs in his favor. As such, Plaintiff's Motion will be denied.

## CONCLUSION

For the reasons stated, Defendants' Motion shall be granted in part and denied in part. Defendants Lt. James Bennett and Sgt. Eric J. Smith's Motion, construed as a motion to dismiss, is granted. Defendants William Twigg and Christopher Loibel's Motion, construed as a motion for summary judgment, is denied. Defendants Benjamin Wagner and Lt. James Smith's Motion, construed as a motion for summary judgment, is granted. Plaintiff's Motion for Preliminary Injunction is denied. Because this case shall proceed to discovery, counsel shall be appointed to represent Plaintiff.

A separate Order follows.

/S/

February 26, 2025___
Date

Julie R. Rubin
United States District Judge